IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02292-CMA-KLM

USA,

      Plaintiff,

v.

JAMES D. WELCH, individually and as Executive Trustee of Celestial Pursuits Trust,
AMRA WELCH, as nominee/alter ego of James D. Welch, and
CIT GROUP/EQUIPMENT FINANCING, INC.,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

      This matter is before the Court on Plaintiff's **Motion for Summary Judgment
Against Jim D. Welch and Amra Welch** [Docket No. 63; Filed October 3, 2012] (the
"Motion").  On December 26, 2012, Defendants Jim D. Welch ("Defendant Welch") and
Amra Graff, formerly Amra Welch ("Defendant Graff") (collectively, "Defendants")[1] filed a
Response [#95].  On January 11, 2013, Plaintiff filed a Reply [#97].  The Motion has now
been fully briefed.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.L.Civ.R. 72.1.C., the
Motion has been referred to this Court for recommendation [#67].  Having considered the
pleadings and the docket in this case, the Court is fully advised of the issues.  For the
reasons set forth below, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#63]

_____

[1] On December 19, 2012, the District Judge entered default judgment against the other two
defendants, CIT Group/Equipment Financing and Celestial Pursuits Trust, Jim D. Welch, Executive
Trustee.  *Default Judgment* [#94].

be **GRANTED IN PART** and **DENIED without prejudice IN PART**.

### I. Statement of the Case and the Parties' Arguments

**A.     Background**

The above-captioned lawsuit was brought by Plaintiff United States of America on

August 31, 2011 [#1].  The purpose of the lawsuit was to recover unpaid taxes allegedly

owed by Defendant Welch to Plaintiff.   Specifically, Plaintiff sought "[1] to reduce to

judgment the outstanding federal tax liabilities assessed against James D. Welch and [2]

to foreclose federal tax liens against a parcel of real property located in Colorado . . . ."

*Compl.* [#1] ¶ 1.  The property at issue is referred to throughout this Recommendation and

the parties' pleadings as the "Real Property" and is located at "Lot 2, in Black Forest

Square Filing No. 1, in El Paso County, Colorado, according to the plat thereof recorded

August 28, 1998 at Reception No. 98123605."  *Id.* ¶ 10; *Routledge Ex. N, Warranty Deed*

[#65-14]; *Routledge Ex. O, Quitclaim Deed* [#65-15].   The Complaint alleged that

Defendant Welch bought the property with his own funds, transferred title to Celestial

Pursuits Trust (the "Trust"), of which he was sole and Executive Trustee, in 1999, and then

transferred title from the Trust to his daughter, Defendant Graff.  *Compl.* [#1] ¶¶ 11-13, 21;

see *Decl. of Anthony Roybal ("Roybal Decl.")* [#64] ¶ 7; *Routledge Ex. O, Quitclaim Deed*

[#65-15].

**B.     Tax Liability**

On May 25, 2000, the Internal Revenue Service ("IRS") received a Form 1040, U.S.

Individual Income Tax Return, filed by Defendant Welch for tax year 1998.  *Routledge Ex.*

*C, Form 1040 for 1998* [#65-3].  On the Form 1040, Defendant Welch claimed that he had

no income for the  tax year of 1998.  *Id.*  Plaintiff enclosed with the 1998 Form 1040 a two-page memorandum challenging the authority of the IRS to collect taxes.  *Id.*; *Watson Ex. A, Dep. of Welch* [#66-1] at 30-33.  According to evidence entered by Plaintiff, Defendant Welch failed to report three items of income on his 1998 tax return: $1,722,217 in gain from the sale of stock; $6,000 in nonemployee compensation; and $10,162 in taxable interest.  *Watson Ex. A, Dep. of Welch* [#66-1] at 12-16; *Routledge Ex. D, Income Tax Examination Charges* [#65-4] at 2.

On May 25, 2000, the IRS also received a Form 1040, U.S. Individual Income Tax Return filed by Defendant Welch for 1999.  *Routledge Ex. F, Form 1040 for 1999* [#65-6].  Defendant Welch again claimed that he had no income and enclosed a two-page memorandum challenging the authority of the IRS to collect taxes.  *Id.*; *Watson Ex. A, Dep. of Welch* [#66-1] at 33-35.  According to Plaintiff, Defendant Welch failed to report income on his 1999 tax return: specifically, $4,374,047 in income from stock sales, as well as $5,058 in taxable interest.  *Motion* [#63] at 4 (citing *Watson Ex. A, Dep. of Welch* [#66-1] at 17-21).

The Forms 1040, together with their attachments challenging the authority of the IRS to collect taxes, were referred to the IRS Penalty Screening Committee for consideration of whether Defendant Welch should be assessed a penalty for filing a fraudulent return.  *Routledge Decl.* [#65] ¶¶ 13-18.  On July 10, 2000, and August 25, 2000, the IRS sent Defendant Welch letters informing him that the Forms 1040 submitted for tax years 1998 and 1999 were frivolous and advising Defendant Welch that if he did not file corrected returns, a fraudulent return penalty would be assessed under 26 U.S.C. § 6702.  *Routledge Decl.* [#65] ¶¶ 15-17; *Routledge Ex. J, July 10th Letter 3176* [#65-10] at 2; *Routledge Ex.*

*K, August 25th Letter 3176 (1999 penalties)* [#65-11] at 2; *Routledge Ex. L, August 25th Letter 3176 (1998 penalties)* [#65-12] at 2. On August 30, 2001, when Defendant Welch failed to file corrected returns for either tax year, the IRS Penalty Screening Committee approved the imposition of frivolous return penalties. *Routledge Decl.* [#65] ¶ 18; *Routledge Ex. M, Penalty Screening Committee Case Approval Record* [#65-13]; *Routledge Decl.* [#65] ¶¶ 13-14; *Routledge Ex. H, Certificate of Assessments, Payments, and Other Specified Matters for 1998 Civil Penalty ("Form 4340 for 1998 Penalties")* [#65-8]; *Routledge Ex. I, Certificate of Assessments, Payments, and Other Specified Matters for 1999 Civil Penalty ("Form 4340 for 1999 Penalties")* [#65-9].

The IRS also assessed federal income tax liabilities against Welch for tax years 1998 and 1999. *Routledge Decl.* [#65] ¶¶ 7-18; *Routledge Ex. B, Certificate of Assessments, Payments, and Other Specified Matters for 1998 Income Tax Return ("Form 4340 for 1998 Liability")* [#65-2]; *Routledge Ex. E, Certificate of Assessments, Payments, and Other Specified Matters for 1999 Income Tax Return ("Form 4340 for 1999 Liability")* [#65-5]. On August 13, 2003, a Notice of Deficiency concerning these tax liabilities was sent to Defendant Welch by certified mail. *Routledge Decl.* [#65] ¶ 12; *Routledge Ex. G, Notice of Deficiency* [#65-8]. While attempting collection of these liabilities, on May 20, 2008, IRS Revenue Officer Anthony Roybal ("Roybal") interviewed Defendant Welch. *Roybal Decl.* [#64] ¶¶ 3-4. Roybal asserts that during that interview, Defendant Welch admitted to selling substantial amounts of stock in 1999 as part of the settlement of his divorce from his ex-wife.[2] *Id.* Notably, Defendant Welch reported no income for 1999.

---

[2] Roybal does not discuss how much income Welch received from this sale.

*Routledge Ex. F, Form 1040 for 1999* [#65-6].

Plaintiff seeks to reduce to judgment federal income tax and frivolous return penalties assessed against Defendant Welch for the years 1998 and 1999. *Motion* [#63] at 8. Plaintiff argues that Forms 4340 are an appropriate means of establishing a valid assessment, and that the assessments of tax and the assessments of penalties reflected on these Certificates are entitled to a presumption of validity, establishing the government's *prima facie* case for the purposes of summary judgment. *Id.* at 9 (citing *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992)). Plaintiff contends that these forms show that the federal tax liabilities were properly assessed against Defendant Welch, that the notices and demand for payment were properly sent, and that Defendant Welch is presumptively liable for the unpaid taxes, interest, penalties, and other statutory additions identified thereon. *Id.* (citing *March v. IRS,* 335 F.3d 1186, 1188 (10th Cir. 2003); *Guthrie v. Sawyer,* 970 F.2d 733, 737 (10th Cir. 1992); *Hughes v. United States,* 953 F.2d 531, 540 (9th Cir. 1992)). Defendant Welch complains that because the Forms 4340 submitted by the United States were not Forms 23(c) signed under penalty of perjury, as he asserts is required under 26 U.S.C. § 6065, the Court may not rely on them to establish the presumption that a valid assessment occurred. *Response* [#95] ¶¶ 28, 57.

Plaintiff next contends that a federal tax lien has been in effect since the liabilities were assessed against Defendant Welch, and that because Defendant Welch has not paid his federal tax liabilities, the United States may foreclose those tax liens on any property in which Defendant Welch has an interest, including the Real Property discussed below. *Motion* [#63] at 15 (citing 26 U.S.C. §§ 6321, 6322; *Drye v. United States.*, 528 U.S. 49, 55 (1999)).

## B.    Transfer of the Real Property

On February 19, 1999, a Warranty Deed was recorded transferring title to the Real Property from Samuel's Custom Homes, Inc. to Celestial Pursuits Trust. *Routledge Decl.* [#65] ¶ 19; *Compl.* [#1] ¶ 1.   According to Plaintiff, Defendant Welch bought the Real Property with his own funds, transferred title to Celestial Pursuits Trust, of which he was Executive Trustee, and in 1999 then transferred title from the Trust to his daughter, Defendant Graff.   *See Decl. Roybal* [#64] ¶ 7; *Routledge Ex. O, Quitclaim Deed* [#65-15].

In his interview with the IRS, Defendant Welch admitted that although the Real Property was titled in the name of the Trust, it was purchased with Defendant Welch's personal funds.   *Roybal Decl.* [#64] ¶ 7.   Defendant Welch explained that the Trust was determined to be a bogus trust by the special master in his divorce case.   *Id.* ¶ 5. Defendant Welch admitted to Roybal that setting up the Trust was the worst thing he had ever done and that he should not have done so.   *Id.* ¶¶ 5 – 6. He also admitted that he was ordered by the divorce court to liquidate all the assets of the trust and pay a portion of the proceeds to his spouse pursuant to their divorce.   *Id.*

By quitclaim deed recorded December 15, 2003, Defendant Welch, as Trustee of Celestial Pursuits Trust, transferred the Real Property to his daughter, Defendant Graff.[3] *Routledge Decl.* [#65] ¶ 20;   *Routledge Ex. O, Quitclaim Deed* [#65-15].   Defendant Welch was sent a Notice of Deficiency by the IRS on August 12, 2003.   *Id.*   This document notified him that the IRS intended to assess federal income tax liabilities against him for both 1998

---

[3]  In this matter, Plaintiff argues as an alternative theory that this was a fraudulent transfer. *Motion* [#63] at 23.

and 1999, unless he filed a petition with the tax court within 90 days. *Id.* About four months later, Defendant Welch transferred the Real Property to his daughter by a Quitclaim Deed "in consideration of the sum of ten dollars and other consideration of value[.]" *Routledge Ex. O, Quitclaim Deed* [#65-15]. During its assessment, the IRS was unable to find any assets of Defendant Welch titled in his name. *Roybal Decl.* [#64] ¶ 8.

Plaintiff asserts that since initially purchasing the Real Property, Defendant Welch has "used it as the personal residence for himself and, at times, his mother, son, and grandchildren." *Motion* [#63] at 6. Defendant Welch explicitly admits only that he has a son and two grandchildren living at the Real Property. *Watson Ex. A, Dep. of Welch* [#66-1] at 26. Defendant Graff admits that she lived at the Real Property in 2003, and that her grandmother, Louann Welch, resided there at the time of the deposition. *Watson Ex. B, Dep. of Graff* [#66-2] at 13-14. Both Defendants assert the Fifth Amendment when asked if or when Defendant Welch lived at the Real Property. *Watson Ex. A, Dep. of Welch* [#66-1] at 24; *Watson Ex. B, Dep. of Graff* [#66-2] at 11. Although Defendants remain silent on the issue, Plaintiff asserts that Defendant Graff "has placed no restrictions on the use of the Real Property [by Defendant Welch.]" *Motion* [#63] at 6.

Plaintiff contends that federal tax liens attach "not only to the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977)). Plaintiff also argues that the level of control maintained by Defendant Welch over the Real Property shows that Defendant Graff is a nominee of Defendant Welch, that Defendant Welch is the true

beneficial owner of the Real Property, and that the interest is attachable by the federal tax liens.  *Motion* [#63] at 18.

Plaintiff argues in the alternative that even if it were not the case that Defendant Graff holds title to the Real Property as a nominee of Defendant Welch, the transfer of the Real Property to Defendant Graff was a fraudulent conveyance under the Colorado Uniform Fraudulent Conveyance Act.  *Id.* at 19; Colo. Rev. Stat. § 38-8-105(1).  Plaintiff adds that even if this Court were to determine that Welch did not possess the actual intent to defraud the United States through the transfer of the Real Property, those transfers are nonetheless fraudulent under Colo. Rev. Stat. § 38-8-106(1).

Defendants provide no information refuting the factual allegations in Plaintiff's Motion concerning the Real Property in this case, and instead simply assert that Defendant Welch "has no interest in the property. . . [that i]t was never intended to be his, never has been his, and has never been treated as his."  *Response* [#95] ¶ 62.  Defendants instead focus on "three main issues."  *Id.* ¶ 2.  First, the Response complains that Plaintiff lacks authority to bring this action, as Plaintiff presented no evidence to confirm that this case is brought at the direction of the Attorney General and has been authorized by the IRS Chief Counsel. *Id.*  Second, Defendants argue that Plaintiff seeks to declare Defendant Welch as a taxpayer and hold him liable as such without supporting evidence.  *Id.* ¶ 10.  Third, as discussed above, Defendants argue that Plaintiff's failure to provide Defendants with a signed Form 23C defeats the presumption of a valid tax assessment and constitutes a violation of due process.  *Id.* ¶¶ 20, 57, 58.

## II.  Standard of Review

### A.    Summary Judgment

-8-

Summary judgment is proper when the record before the court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if the outcome could be decided in favor of either party. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it could reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the movant bears the ultimate burden of proof at trial, it must submit evidence to establish every element of its claims. *In re Ribozyme Pharm. Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  Once the Motion has been properly supported, the burden shifts to the non-movant to show the existence of a genuine dispute of a material issue by going beyond the allegations in its pleading and providing "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  To satisfy its burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The factual record and inferences therefrom are viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).  However, the Court is not obligated to consider conclusory statements or testimony based on conjecture, subjective belief, or inadmissible evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).

## B.     Fifth Amendment Privilege and Summary Judgment

A litigant in a civil action may unquestionably assert a Fifth Amendment privilege and refuse to reveal information properly subject to the privilege. *See Mid-America's Process Serv. v. Ellison*, 767 F.2d 684, 686 (10th Cir. 1985); *see also United States v. Kordel*, 397

U.S. 1, 7-8 (1970).  However, a litigant asserting the privilege may have to accept certain bad consequences that flow from that action.  *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976).  In particular, adverse inferences may be drawn against a party who refuses to testify in response to probative evidence offered against him.  *Mitchell v. United States*, 526 U.S. 314, 327 (1999).  "[A]s Mr. Justice Brandeis declared, speaking for a unanimous court . . . '[s]ilence is often evidence of the most persuasive character.'"  *Baxter*, 425 U.S. at 319 (*quoting United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-154 (1923)).  The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including the Tenth Circuit, in the years since *Baxter* was decided.  *See, e.g., United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1274 (10th Cir. 2008) ("[a] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence.*"); Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 801-02 (7th Cir. 1993); *Koester v. American Republic Investments, Inc.*, 11 F.3d 818, 823-24 (8th Cir. 1993); *RAD Services, Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 274-75, 277 (3d Cir. 1986); *Brink's, Inc. v. City of New York*, 717 F.2d 700 (2d Cir. 1983); *Hoover v. Knight*, 678 F.2d 578, 581-82 (5th Cir. 1982).

Fifth Amendment privilege cannot be converted into "a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his[,]" and thus, a party may not avoid his burden on a motion for summary judgment by standing on a Fifth Amendment privilege.  *United States v. Rylander*, 460 U.S. 752, 758 (1983); *see Chaffin, Inc. v. Wallain*, 689 P.2d 684, 688-89 (Colo. Ct. App.1984) (holding that adverse inferences were permissible in the face of

defendants' repeated invocation of Fifth Amendment privilege in discovery responses); *see also United States v. $64,765.00 in U.S. Currency*, 786 F. Supp. 906, 913 (D. Or. 1991). Therefore, "the claim of privilege is not a substitute for relevant evidence." *Rylander*, 460 U.S. at 761.   However, in ruling on motions for summary judgment, all inferences are generally drawn in favor of the non-movant. *Byers*, 150 F.3d at 1274.   Therefore, where there is any doubt that Plaintiff has clearly met its summary judgment burden, this Court hesitates to drawn an adverse inference against one who claims the Fifth Amendment privilege at the summary judgment stage.  *See In re Marrama*, 445 F.3d 518, 522 (1st Cir. 2006); *see also   Mulero-Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 678 (1st Cir. 1996) (explaining that a party's invocation of the Fifth Amendment in discovery does not alter the requirement that inferences for summary judgment be drawn in favor of non-movant); *accord LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) ("[E]ven in a civil case a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage.").

### III.  Analysis

The issue in this case is whether the United States is entitled to foreclose its federal tax lien on the Real Property to satisfy Defendant Welch's outstanding tax liabilities. Because the United States is the Plaintiff in this suit, it has the ultimate burden of demonstrating that foreclosure is appropriate.  *See In re Ribozyme Pharms.*, 209 F. Supp. 2d at 1111.  Plaintiff must establish that (1) it has a valid federal tax lien, and (2) that the taxpayer has an interest in the property  that the lien seeks to foreclose.  *See United States v. Janis*, 428 U.S. 433, 440-41 (1976); *United States v. Miller Bros. Const. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974).

-11-

Plaintiff moves for summary judgment in its favor, asking the Court (1) to reduce to judgment federal tax assessments against Defendant Welch for tax years 1998 and 1999, and (2) to foreclose those tax liens against the Real Property. *Motion* [#63] at 1.  In support of the Motion, Plaintiff first contends that it has a valid federal tax lien because it has conclusively established tax liabilities with presumptively valid tax assessments.  *Id.* at 8-12.  Plaintiff next argues that it is entitled to foreclose its tax liens against the Real Property at issue in this suit either because it is held by a nominee of Defendant Welch or because it was fraudulently conveyed in an attempt to avoid tax liability.  *Id.* at 14-24.

## A.    Whether the United States Has the Authority to Bring Suit

Defendants' Response complains that Plaintiff lacks authority to bring this action because Plaintiff presented no evidence to confirm that this case was authorized by the IRS Chief Counsel and brought at the direction of the Attorney General.  *Response* [#95] ¶ 62. The Court addresses this preliminary argument first, finding that Plaintiff has presented sufficient evidence to confirm its authority to bring this suit.

The authority to bring the suit was properly pleaded in the Complaint.  *Compl.* [#1] ¶ 2.  Unless the issue of authority is specifically challenged, that pleading is sufficient to establish jurisdiction.  *United States v. Twenty-Two Firearms*, 463 F. Supp. 730 (D. Colo. 1979).   Here, Defendants challenged that authority, and Plaintiff has responded with evidence sufficient to show that the United States has complied with the requirements of 26 U.S.C. § 7410.

Section 516 of Title 28 of the United States Code provides that "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested . . . is reserved to officers of the Department of Justice . . . ." *See also United States v.*

*Plesinski*, 912 F.2d 1033, 1038 (9th Cir. 1990) (indicating that either the Department of Justice or United States Attorneys can represent the United States in litigation), *cert. denied*, 499 U.S. 919 (1991).  The Department of Justice, under the direction of the Attorney General, has promulgated regulations authorizing the Tax Division to represent the United States in various tax matters.  *See* 28 C.F.R. § 0.70.

By letter dated December 16, 2009, the Office of Chief Counsel of the IRS, a delegate of the Secretary, authorized and requested this suit under 26 U.S.C. § 7401.  *See Second Declaration of Rick Watson ("Watson Decl. (2)"), Ex. A, Letter from Office of Chief Counsel of the Internal Revenue Service* [#97-2].  Subsequently, the Attorney General of the United States directed that this action be commenced, and the suit was therefore filed.  *See Watson Decl. (2), Ex. 3, Letter from DOJ* [#97-3].  Plaintiff included with its Reply a copy of the letter dated August 31, 2011, indicating that [1] the Department of Justice was authorized and requested to commence this action against the Defendant and that [2] the Attorney General of the United States directed that this action be commenced.  *See id.*

As the authorization letter shows [#97-2] , this action was brought at the request and with the authorization of the Chief Counsel of the IRS, a delegate of the Secretary of the Treasury.  The production of the authorization letter is sufficient to show that the United States complied with the § 7401 requirement.  *Palmer v. Internal Revenue Service*, 116 F.3d 1309, 1311 (9th Cir. 1997); *United States v. Twenty-Eight "Mighty Payloader" Coin-Operated Gaming Devices*, 623 F.2d 510, 513 n.2 (8th Cir. 1980). As the letter from the Principal Deputy Assistant Attorney General [#97-3] shows, the Attorney General of the United States directed that this action be commenced.  Thus, the United States has complied with the applicable procedural requirements, and in the absence of any evidence

-13-

that would rebut the presumption of regularity that attaches to the actions of public officers, the Court has jurisdiction over this matter.  *See Palmer*, 116 F.3d at 1311 (citing *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926)).  Defendants have presented no such evidence to rebut this presumption, and the Court finds that Plaintiff has established authority to bring the present suit to this Court.

**B.    Whether There Is a Valid Federal Tax Lien**

Pursuant to 26 U.S.C. § 6321, a tax lien arises when (1) the taxpayer is found to be liable to pay any tax; (2) a demand has been made for such payment; and (3) the taxpayer has refused to pay.

**1.    Liability as Taxpayer**

Defendant Welch, under the heading of "No Liability in Evidence," contests his liability to pay the taxes at issue in this case.  *Response* [#95] at 3.  This section of Defendants' Response and attached exhibits consists solely of standard tax protestor arguments that this Court has previously rejected and that the IRS has deemed "frivolous." *See Recommendation Of United States Magistrate Judge* [#60] (adopted by the District Judge at [#68]); *see also The Truth About Frivolous Tax Arguments*, Internal Revenue Service, 44 (Feb. 16, 2012), http://www.irs.gov/pub/irs-utl/friv_tax.pdf (last viewed on Feb. 21, 2013).

With respect to Defendants' argument that Plaintiff has failed to show that Defendant Welch is a "taxpayer," the Internal Revenue Code defines "taxpayer" at § 7701(a)(14) as any person subject to any internal revenue tax, and § 7701(a)(1) defines "person" to include an individual, trust, estate, partnership, or corporation.  Defendant Welch argued that this definition should not include him because he "does NOT hold a public office, nor

-14-

is he connected with a 'trade or business' within the United States as 'trade or business' is defined in the code at 26 U.S.C. §7701(a)(26)." *Response* [#95] ¶ 14. Section 7701(a)(26) does note that the term "trade or business" includes positions in public office. However, 26 U.S.C. §7701(c) states that the use of the word 'includes' "shall not be deemed to exclude other things otherwise within the meaning of the term defined." Thus, the word "includes" as used in the definition of "trade or business" is a term of enlargement, not of limitation. *See United States v. Latham*, 754 F.2d 747, 750 (7th Cir. 1985) (holding that "[i]t is obvious within the context of [the law that] the word 'includes' is a term of enlargement not of limitation, and the reference to certain entities or categories is not intended to exclude all others."); *see also Biermann v. Commissioner*, 769 F.2d 707, 708 (11th Cir. 1985), *reh'g denied*, 775 F.2d 304 (11th Cir. 1985) (holding that the claim that Biermann was not "a person liable for taxes" was "patently frivolous" and imposing penalties).

Every citizen's responsibility to pay taxes is well settled. *See Helvering v. Mitchell*, 303 U.S. 391, 399 (1938); *United States v. Tedder*, 787 F.2d 540, 542 (10th Cir. 1986); *Abell v. Sothen*, 214 Fed. App'x 743, 757 (D. Colo. 2007). Defendants have utterly failed to offer evidence suggesting Defendant Welch should be exempt from that rule, and may not avoid this burden by standing on a Fifth Amendment privilege. *See Rylander*, 460 U.S. at 758 (holding that Fifth Amendment privilege cannot be used as "a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his."); *$64,765.00 in U.S. Currency*, 786 F. Supp. at 913. As such, Defendants' arguments provide no basis for denial of summary judgment.

## 2.    Demand and Failure to Pay

In this case, there is no dispute that Defendant Welch received demands for the tax liability in question.  *Motion* [#63] ¶¶ 8,11; *Routledge Decl., Ex. G. Notice of Deficiency* [#65-7], *Routledge Ex. J, July 10th Letter 3176* [#65-10] at 2; *Routledge Ex. K, August 25th Letter 3176 (1999 penalties)* [#65-10] at 2; *Routledge Ex. L, July 10th Letter 3176 (1998 penalties)* [#65-10] at 2; *Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2]; *Routledge Ex. E, Form 4340 for 1999 Liability* [#65-5].  Defendant Welch received five Forms 668 that included notice of each necessary assessment date for both Defendant Welch's § 1040 liabilities and his § 6702 penalties.  *Response Ex. 2, 668(y) Forms* [#95-2].  There is also no dispute that Defendant Welch has not paid the requested tax liability.  The contention between the parties is instead whether these demands arose from a procedurally valid tax assessment against Defendant Welch.

A "federal tax lien is perfected upon assessment and no further action need be taken."  *United States v. Novotny*, 90 A.F.T.R.2d (RIA) 2002-5684, 2002-5695 (D. Colo. 2002) (citing *United States v. Vermont*, 377 U.S. 351, 352 (1964)).  Further, "[a]n assessment of tax as well as an assessment for failure to file tax returns and make estimated tax payments are entitled to a presumption of validity."  *Id.* at 2002-5694 (citations omitted).  Courts have repeatedly held that a Certificate of Assessments is sufficient evidence that tax assessments were properly made, and that these certificates may be relied upon in ruling on a motion for summary judgment.  *See*, *e.g.*, *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992); *United States v. Chila*, 871 F.2d 1015, 1017 (11th Cir. 1989); *United States v. Miller*, 318 F.2d 637, 639 (7th Cir. 1963); *see also United States v. Nuttall*, 713 F. Supp. 132, 135 (D. Del. 1989) *aff'd*, 893 F.2d 1332 (3rd Cir. 1989) (finding that Forms 4340 establish government's prima facie case that assessment is valid

for purposes of summary judgment); *see also Nestor v. Commissioner*, 118 T.C. 162 (2002) (holding that it was not an abuse of discretion for the Appeals Officer to use Form 4340 to verify the assessment).   In support of this Motion, Plaintiff has submitted Forms 4340, Certificates of Assessments, Payments and Other Specified Matters, pertaining to Defendant Welch's federal tax liabilities for each tax year at issue.   *Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2];  *Routledge Ex. E, Form 4340 for 1999 Liability*  [#65-5]. Plaintiff has also submitted Forms 4340 for Defendant Welch's civil penalty liabilities for filing fraudulent and frivolous tax returns.   *Routledge Ex. H, Form 4340 for 1998 Penalties* [#65-8]; *Routledge Ex. I, Form 4340 for 1999 Penalties* [#65-9].   Thus, Plaintiff establishes a presumption of a valid assessment.

Because these assessments are given a presumption of correctness, the burden now shifts to Defendants to submit admissible evidence to rebut that presumption. *Novotny*, 90 A.F.T.R.2d at 2002-5694.   While Defendants challenge this presumption under one large heading alleging "Violation of Defendants [sic] Right to Due Process," the Court isolates and separately addresses Defendants' two identifiable arguments regarding the procedural invalidity of the assessments.

### a.    Lack of Signature

In an attempt to rebut the presumption of valid assessment, Defendants first argue that every document required by the Internal Revenue Code must be signed under penalty of perjury, pursuant to 26 U.S.C. § 6065.   *Response* [#95] ¶¶ 18, 30.   This argument is easily dismissed.  26 U.S.C. § 6323(f)(3) provides that "[t]he form and content of the notice [of a lien imposed by § 6321] shall be prescribed by the Secretary [, and that s]uch notice *shall be valid notwithstanding any other provision of law regarding the form or content of*

*a notice of lien.*" 26 U.S.C. 6323(f)(3) (emphasis added).  Accompanying regulations at 26 C.F.R. § 301.6323(f) provide that the notice of federal tax lien must be filed on a Form 668, Notice of Federal Tax Lien Under Internal Revenue Laws, and must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose.  26 C.F.R. § 301.6323(f).  The regulation also provides that "[s]uch notice is *valid notwithstanding any other provision of law regarding the form or content of a notice of lien.*" 26 C.F.R. §§ 301.6323(f)-1(d) (emphasis added.

Defendant Welch admits to having received these Forms 668, and notably includes each of the five forms no less that five separate times in attachments to Defendants' Response.  *See Response Ex. 2, 668(y) Forms* [#95-2], *Response Ex. 5, Identical Copies of 668(y) Forms* [#95-5]; *Response Ex. 6, Feb. 27, 2012 FOIA Request* [#95-6] at 4-8; *Response Ex. 7, Subpoena to Produce Documents for Maureen Green* [#95-7] at 4-8; *Response Ex. 8, Subpoena to Produce Documents for Sally Kilpatrick* [#95-8] at 4-8.  Each Notice of Federal Tax Lien includes what kind of tax has been assessed (a), the tax period for which it was assessed (b), a date of assessment (d), and the unpaid balance of said assessment (f).  *Response Ex. 2, 668(y) Forms* [#95-2].  According to 26 C.F.R. 301.6323(f)-1(d), these forms constitute valid notice of a federal lien, regardless of whether or not they bear the signature of the Secretary of the Treasury.

Tax assessments are formally recorded on a record of assessment.  26 U.S.C. § 6203.  In order to support a valid assessment, the summary record of assessment must "provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment;" the date of the assessment is the date the summary record is signed.  62 C.F.R. § 301.6203-1.  The Court can identify no

statutory or regulatory requirement mandating that, to be valid, a *notice* of federal tax lien must be signed by anyone or, if it is signed, that it must be signed by the Secretary of the Treasury. *The Truth About Frivolous Tax Arguments*, Internal Revenue Service, 44 (Feb. 16, 2012), http://www.irs.gov/pub/irs-utl/friv_tax.pdf (last viewed on Feb. 21, 2013). Similarly, the Court can identify no requirement in the statute or regulation that the Secretary of the Treasury personally sign an assessment. *Id.* at 42. As such, Defendants' arguments under 26 U.S.C. § 6065 fail to rebut the presumption of a valid assessment.

### b.    Absence of Form 23C

Plaintiff seems to understand Defendants' next due process argument as relying on *Huff v. United States*, 10 F.3d 1440 (9th Cir. 1993), to support a claim that the Forms 4340 submitted by Plaintiff may not be relied upon by the Court to establish a valid assessment as they do not contain a "23C" assessment date. *Reply* [#97] at 7. However, while Defendants cite *Huff*, they do so to argue that "there must be a proper procedural assessment" in the form of a *separate* Form 23C. *Response* [#95] ¶ 28. Defendants contend that the government's failure to produce this form, despite Defendants' repeated requests, creates a "genuine issue of material fact as to whether the IRS has complied with the requirements of § 6203." *Id.* ¶ 57.

The IRS has repeatedly refuted the argument that before the IRS may collect overdue taxes, the IRS must provide taxpayers with a summary record of assessment made on a Form 23-C or on another particular form. *See* Rev. Rul. 2007-21, 2007-1 C.B. 865*; see also The Truth About Frivolous Tax Arguments*, Internal Revenue Service, 42 (Feb. 16, 2012) http://www.irs.gov/pub/irs-utl/friv_tax.pdf (last reviewed on Feb. 21, 2013). In an Internal Revenue Bulletin published on April 2, 2007, the IRS addressed this very

argument:

> [A]lthough an assessment is recorded on a summary record of assessment, such as the Form 23C . . . _there is no legal requirement that a summary record of assessment be provided to a taxpayer before the Service may proceed with collection activity_. Further, if a taxpayer requests proof that an assessment was made, _the Service is not required to provide any particular form_ or information in any particular format to the taxpayer _so long as the Service provides the information required by Treasury Regulation § 301.6203-1 to the taxpayer_. Any position to the contrary has no merit and is frivolous.

Rev. Rul. 2007-21, 2007-1 C.B. 865 (emphasis added).  In _Nestor_, 118 T.C. at 166, the tax court held that the petitioner was not entitled to production of Form 23C at his collection due process hearing, and that it was not an abuse of discretion for the Appeals Officer to use Form 4340 to verify the assessment, for purposes of section 6330(c)(1).  Similarly, in _Powell v. Commissioner_, T.C. Memo. 2009-174, 98 T.C.M. (CCH) 56, *6 (2009),  the court awarded a $25,000 penalty against the petitioner for frivolously asserting that the respondent was obligated to produce a Form 23C where, just as Defendant Welch has, petitioner had received notices of deficiency.

To support a valid assessment, a summary record of assessment must identify the taxpayer, the character of the liability, the taxable period, and the amount of the assessment.  62 C.F.R. § 301.6203-1.  In support of this Motion, Plaintiff has submitted Forms 4340 pertaining to Defendant Welch's federal tax liabilities and civil penalties for each of the tax years at issue.  _Routledge Ex. B, Form 4340 for 1998 Liability_ [#65-2]; _Routledge Ex. E, Form 4340 for 1999 Liability_  [#65-5]; _Routledge Ex. H, Form 4340 for 1998 Penalties_ [#65-8]; _Routledge Ex. I, Form 4340 for 1999 Penalties_ [#65-9].  Forms 4340 are generated under seal and signed by an authorized delegate of the Secretary of the Treasury, and are thus self-authenticating under Federal Rule of Evidence 902(1).  Fed.

R. Evid. 902(1).  Forms 4340 are also admissible into evidence as a trustworthy public record.  Fed. R. Evid. 803(8).  Though the Forms 4340 in this case use the term "assessment date" rather than "23C date," the Forms 4340 plainly sets forth the assessment dates and are sufficient to support summary judgment. *See, e.g., Long*, 972 F.2d at 1181; *Chila*, 871 F.2d at 1017; *Miller*, 318 F.2d at 639;  *Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2]; *Routledge Ex. E, Form 4340 for 1999 Liability* [#65-5];  *Routledge Ex. H, Form 4340 for 1998 Penalties* [#65-8]; *Routledge Ex. I, Form 4340 for 1999 Penalties* [#65-9].  There is no additional requirement for the IRS to produce a separate Form 23(c).

Defendants' arguments that due process has been violated are demonstrably without merit.  When Plaintiff supports an assessment of tax liability with Certificates of Assessments and Payments, these certificates provide presumptive proof of a valid assessment. *See, e.g., Long*, 972 F.2d at 1181; *Chila*, 871 F.2d at 1017; *Miller*, 318 F.2d at 639; *Egbert v. United States*, 752 F. Supp. 1010, 1019  (D. Wyo. 1990) *aff'd* 940 F.2d 1539, *cert. denied* 502 U.S. 1016; *see also Nuttall*, 713 F. Supp. at 135; *see also Nestor*, 118 T.C. at 166.  It is settled law in this Circuit that for purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by § 6203 and C.F.R. § 301.6203-1. *See, e.g., Long*, 972 F.2d at 1181; *see also James v. United States*, 970 F.2d 750, 755 (10th Cir. 1992) (holding that where the IRS mailed notices of assessment and demand for payment, (1) the IRS documents can establish that assessments were made, and (2) these notices satisfy the requirement that the IRS provide a copy of the record of the assessment).  Once a Certificate of Assessment reveals a taxpayer's liability, the burden is on the taxpayer to

overcome the presumption of accuracy by presenting countervailing proof. *Egbert,* 752 F. Supp. at 1019. Defendants provide no evidence to counter this presumption, and Defendants' arguments are insufficient to overcome a motion for summary judgment. *See Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 800 (10th Cir.1991) ("A nonmoving party cannot survive a motion for summary judgment based on bare allegations in the pleadings without supporting evidence.").

Plaintiff has met its initial burden for summary judgment by providing the Forms 4340 in support of the Motion, and Defendants have provided no information to refute this presumption. Therefore, the Court finds that the assessment in this case is presumptively valid.

### 3.    Amount of Tax Liability

In addition to the issues raised above, the parties dispute what amount, if any, Defendant Welch owes the IRS. At the time of the filing of its Motion on October 3, 2012, Plaintiff contended that Defendant Welch's outstanding tax liability was $6,601,594.09. *Motion* [#63] at 14; *Routledge Decl.* [#65] ¶ 4.

All that Defendants need do to survive summary judgment on a finding of liability is present sworn testimony refuting the material allegations made in the summary judgment evidence presented by Plaintiff. Fed. R. Civ. P. 56(e). This, as discussed above, they failed to do. When Defendants were deposed and asked about the Notices of Deficiency for the tax years at issue, they asserted their Fifth Amendment right against self-incrimination, despite having no reason to believe that they were under any type of criminal investigation. *Watson Ex. B, Dep. of Graff* [#66-2]; *Watson Ex. A, Dep. of Welch* [#66-1]. Defendants' assertions of the Fifth Amendment in this context allow the court to

draw a negative inference that Defendants have no substantive evidence to challenge the tax assessments at issue, and that the assessments are correct. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also United States v. Simons*, No. 06-750, 2009 WL 4348331, at *2 (D. Utah 2009). However, although the Court has carefully reviewed the parties' motions, analyzed the evidence presented, and considered them in light of the applicable law, the Court is unable to conclude that Plaintiff has presented sufficient factual allegations as to the *precise amount* of Defendant Welch's tax liability.

Defendants have refused to provide documents or testimony from which their income may be determined, but now assert that the IRS has erred in determining income for the years at issue. *See Watson Ex. D, Jim D. Welch's Responses to United States' Interrogatories and Document Requests* [#66-4]; *Watson Ex. F, Amra Welch's Responses to United States' Interrogatories and Document Requests* [#66-6]. A defendant's failure to testify regarding the tax liabilities at issue by instead asserting the Fifth Amendment typically allows the court to draw the negative inference that the testimony would have supported Plaintiff's position. *See United States v. Sullivan*, 274 U.S. 259, 264 (1927) (holding that a taxpayer may not, by silence, "draw a conjurer's circle around the whole matter" of his or her tax liability); *Chaffin*, 689 P.2d at 688-89 (holding that adverse inferences were permissible in the face of defendants' repeated invocation of Fifth Amendment privilege in discovery responses); *accord Libutti v. United States*, 107 F.3d 110, 121 (2nd Cir. 1997) (holding that a court may draw an adverse inference from a party's failure to testify in a civil action).

Here, Defendants are attempting to do precisely that—draw a 'conjurer's circle' around any determination of their tax liability for the years at issue by refusing to respond

to document requests and by pleading Fifth Amendment protection in response to nearly every question asked at their depositions. S*ee Chaffin*, 689 P.2d at 688-89; *see also Sullivan*, 274 U.S. at 264; *see* Robert Heidt, *The Conjurer's Circle-The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062 (1982).   Defendant Welch's deposition, for example, included ten pages of questions about specific business transactions, bank deposits, and sources of income, complete with precise dollar amounts, for the tax years in question. *Watson Ex. A, Dep. of Welch* [#66-1] at 12-21.   Defendant Welch avoided responding to any of these questions by pleading Fifth Amendment protection. *Id*.; *see Sullivan*, 274 U.S. at 264.   However, the Court notes that this is the only place on record where figures are offered as evidence of Defendant Welch's 1999 income. *Watson Ex. A, Dep. of Welch* [#66-1] at 12-21.   Although the government included a Form 5278 for 1998, detailing Defendant Welch's income for that year, there is no accompanying Form 5278 for 1999 to corroborate the figures listed in the deposition. *Id*.; *Routledge Ex. D, Income Tax Examination Charges* [#65-4]; *see United States v. McMullin*, 948 F.2d 1188, 1192 (10th Cir. 1991) ("In a suit brought by the government to collect taxes resulting from unreported income, the government generally establishes a prima facie case when it shows a timely assessment of the tax due, supported by *a minimal evidentiary foundation*, at which point a presumption of correctness arises.") (emphasis added).

Plaintiff has provided Forms 4340 for the years in question. *Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2]; *Routledge Ex. E, Form 4340 for 1999 Liability*  [#65-5]; *Routledge Ex. H, Form 4340 for 1998 Penalties* [#65-8]; *Routledge Ex. I, Form 4340 for 1999 Penalties* [#65-9].   Accordingly, the government's assessment is entitled to a presumption of correctness. *See McMullin*, 948 F.2d at 1192 (holding that a presumption

of correctness attaches to the Commissioner's assessment, once some substantive evidence is introduced demonstrating that the taxpayer received unreported income); *but see Doyal v. Commissioner of Internal Revenue*, 616 F.2d 1191, 1192 (10th Cir. 1980) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935), for the holding  that it was proper to remand a case in which the taxpayer had proved the amount of the Commissioner's assessment to be arbitrary and excessive).   These notices also satisfy 26 U.S.C. § 6203, the requirement that the IRS provide a copy of the record of the assessment. *Novotny*, 90 A.F.T.R.2d at 2002-5694.  However, upon a closer analysis of the Forms 4340 presented by Plaintiff, the Forms 668 presented by Defendants, the INTSTD program evidence presented by Plaintiff, and the figures cited in Plaintiff's Motion, the Court is unable to assure itself that the outstanding balance claimed in Plaintiff's Motion is clear on the face of the Forms 4340. *Motion* [#63] at 23; *Routledge Ex. A, INTSTD Calculations of Liability* [#65-1]; *Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2]; *Routledge Ex. E, Form 4340 for 1999 Liability*  [#65-5]; *Routledge Ex. H, Form 4340 for 1998 Penalties* [#65-8]; *Routledge Ex. I, Form 4340 for 1999 Penalties* [#65-9]; *Response Ex. 2, 668(y) Forms* [#95-2].

The sum of $6,601,594.09 seems to be from the Declaration of Lee Routledge, Technical Advisor of the Internal Revenue Service, who determined the figure using the INTSTD computer program to compute the tax liability, penalties, and applicable interest. *Routledge Decl.* [#65]  ¶¶ 3-4.  As far as the Court can determine, the Balance Due for each year's INTSTD calculation is the sum of the figures under "Assessed Totals" and "Total Accruals."  *Routledge Ex. A, INTSTD Calculations of Liability* [#65-1] at 2, 8.  The "Assessed Total" figures for 1998 and 1999 each seem to be drawn from the "Balance"

figure on the corresponding Form 4340.  *See Routledge Ex. A, INTSTD Calculations of Liability* [#65-1] at 2,8; *compare Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2] at 7, *with Routledge Ex. E, Form 4340 for 1999 Liability* [#65-5] at 6.  The interest accruals from 1998 seem to begin with the September 23, 2003, "Quick Assessment" figure from the corresponding Form 4340, less the "Estimated Tax Declarations" from the same form. *Compare Routledge Ex. A, INTSTD Calculations of Liability* [#65-1] at 3, *with Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2] at 3.  It appears that two penalties, the quick assessment of an "IRC 6662 Accuracy Penalty" and a "Late Filing Penalty," factor into interest calculations beginning in September of 1990.  *Compare Routledge Ex. A, INTSTD Calculations of Liability* [#65-1] at 3, *with Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2] at 3, 4.  However, the Court was unable to verify that the interest accruals in the following pages of the INTSTD calculations actually amount to the 1998 figure listed under "Total Accruals."  *See Routledge Ex. A, INTSTD Calculations of Liability* [#65-1] at 3-7. Similarly, the 1999 interest accruals seem to begin with the "Tax & Penalty" figure, which is the sum of the 1999 quick assessment of the  "IRC 6662 Accuracy Penalty," the September 11, 2003, "Quick Assessment," and the "Late Filing Fee" found in the Form 4340 for 1999.  *Compare Routledge Ex. A, INTSTD Calculations of Liability* [#65-1] at 8, *with Routledge Ex. E, Form 4340 for 1999 Liability* [#65-2] at 3.  This calculation still fails to produce the 1999 figure listed under "Total Accruals."  *See Routledge Ex. A, INTSTD Calculations of Liability* [#65-1] at 8-12.

Had Plaintiff demonstrated in a transparent manner how the liability it requests follows from the valid assessments presumed from the Forms 4304, the Court would be prepared to find fully in Plaintiff's favor regarding the amount of the valid tax lien.  However,

without knowing that these figures are accurately and directly drawn from the presumptively valid assessment figures found in the Forms 4840, the Court hesitates to presume that the INTSTD Calculations of Liability are alone sufficient to determine the proper amount of liability. "Judges are not like pigs, hunting for truffles buried in briefs," and the Court declines to speculate as to the legitimacy of such a high figure without confidence that the liability is correct on the face of valid tax assessments. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995).

In the absence of such certainty, the Court declines to make a summary determination of the government's entitlement to interest and penalties. *See, e.g., United States v. Holmes*, No. 08-02446, 2011 WL 1158675, at *6 (D. Colo. 2011) (declining to make a summary determination of the government's entitlement to interest and penalties where there were two separate time periods during which interest could be calculated and awarded, and where the government did not fully clarify their calculations of interest under applicable authority). However, the Court will permit Plaintiff to submit another dispositive motion for determination of the total amount of liability in light of these concerns for accuracy on the face of a valid assessment. Defendants may respond in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

## C.    Taxpayer Interest in the Properties Sought to be Foreclosed

A valid tax lien attaches to any property owned by the taxpayer. 26 U.S.C. §§ 6321, 6322. Plaintiff asserts that Defendant Welch is the effective owner of the Real Property under two theories. First, Plaintiff argues that Defendant Graff is a nominee of Defendant Welch and that Defendant Welch is the true beneficial owner of the Real Property. *Motion* [#63] at 18. In the alternative, Plaintiff contends that the various transfers of the Real

Property were fraudulent conveyances under the Colorado Uniform Fraudulent Conveyance Act. *Id.* at 19; Colo. Rev. Stat. § 38-8-105(1). Essentially, Plaintiff contends that the transfer of the title of the Real Property to Defendant Graff was a sham transfer for the purpose of shielding the Real Property from being used to satisfy Defendant Welch's outstanding tax debt. *Motion* [#63] at 20. As such, Plaintiff argues that the IRS is entitled to foreclose on these properties to satisfy Defendant Welch's outstanding tax liability.

"A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001). It is a well-settled principle that the "Government may foreclose on property held by a nominee of a taxpayer in order to collect the taxpayer's debt." *United States v. Schaeffer*, 245 B.R. 407, 415 (D. Colo. 1999) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977)). Courts consider several factors to determine whether a title holder should be given nominee status, the most important of which is the taxpayer's ability to exert control, either directly or indirectly, over the property at issue. *See id.* (citing *Valley Fin., Inc. v. United States*, 629 F.2d 162, 172 (D.C. Cir. 1980)). The following considerations are relevant to the Court's determination of whether an individual holds property as the nominee of another:

> (1) the lack of consideration paid by the nominee; (2) the control exercised over the property by the transferor while the title is in the nominee's name; (3) the close relationship between the transferor and the nominee; (4) the use by the transferor of the transferred property; and (5) the lack of interference in transferor's use of property by the nominee . . . Additionally, courts sometimes consider whether the property was placed in the name of a nominee *in anticipation of a suit or the occurrence of liabilities.*

*Novotny*, 90 A.F.T.R.2d at 2002-5695 through -5696 (emphasis added) (citations omitted). Plaintiff argues that the facts in evidence, together with permissible adverse inferences, clearly show that Defendant Graff is a mere nominee of her father, Defendant Welch.

Most clear is the fact that there is a close relationship between Defendants Welch and Graff.  Amra Graff, previously Amra Welch, is the daughter of Jim D. Welch.  *Watson Ex. B, Dep. of Graff* [#66-2] at 9:15.  No one contests this fact.  There is also no dispute that Defendant Welch was the sole and executive trustee of Celestial Pursuits Trust, the bogus trust ordered to be liquidated in 1999 which originally held title to the Real Property.  *Roybal Decl.* [#64] ¶¶ 5-6; *see Routledge Ex. O, Quitclaim Deed* [#65-15].  Thus, an uncontested close relationship exists between the parties.

As to the issue of consideration, the Court is convinced that little to no consideration was paid for the transfer of the deed from Defendant Welch to Defendant Graff.  The deed lists a mere $10 as the consideration paid, and there is no evidence this sum was ever paid by Defendant Graff.  *Routledge Ex. O, Quitclaim Deed* [#65-15].  Defendants Welch and Graff were asked for information concerning what, if any, consideration was paid in conjunction with the purported transfer of the Real Property to Defendant Graff by quitclaim deed.  *Declaration of Rick Watson ("Watson Decl.")* [#66] 5; *Watson Ex. D, Jim D. Welch's Responses to United States' Interrogatories and Document Requests* [#66-4]; *Watson Ex. F, Amra Welch's Responses to United States' Interrogatories and Document Requests* [#66-6].  In their responses to interrogatory requests, requests for production of documents, and at their depositions, both refused to answer this question, instead invoking their rights against self-incrimination under the Fifth Amendment.  *Watson Ex. A, Dep. of Welch* [#66-1]; *Watson Ex. B, Dep. of Graff* [#66-2]; *Watson Ex. D, Jim D. Welch's Responses to United States' Interrogatories and Document Requests* [#66-4]; *Watson Ex. F, Amra Welch's Responses to United States' Interrogatories and Document Requests* [#66-6].  "Silence is often evidence of the most persuasive character." *United*

*States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-154 (1923). Thus, "[f]ailure to contest

an assertion . . . is considered evidence of acquiescence . . . if it would have been natural

under the circumstances to object to the assertion in question." *United States v. Hale*, 422

U.S. 171, 176 (1975)).  Given Defendants' silence on the issue of consideration, combined

with the fact that the deed lists a mere $10 as the consideration paid, the Court accepts the

uncontradicted evidence on the face of the deed and makes the adverse inference against

Defendants that either little or no consideration was exchanged in this transfer.  *See*

*Routledge Ex. O, Quitclaim Deed* [#65-15].

        The Court also considers evidence of the Defendants' respective control over the

Real Property.   Plaintiff asserts that Defendant Graff did not interfere with Defendant

Welch's use of or control over the property.  *Motion* [#63] at 13,18.  Although Defendant

Welch has not admitted to residing at the Real Property, he admits that his mother and

grandchildren currently reside there.  *Watson Ex. A, Dep. of Welch* [#66-1] at 25:19-27:11.

Defendant Graff admits to living at the Real Property in 2003. *Watson Ex. B, Dep. of Graff*

[#66-2] at 8:16.  However, according to her deposition, Defendant Graff and her husband

are now stationed in Anchorage, Alaska.  *Watson Ex. B, Dep. of Graff* [#66-2] at 7:13.

Additionally, the depositions suggest that Defendant may have maintained a close

relationship with the Real Property, including a possible mortgage in his name, not the

name of his daughter, and a possible loan with the Real Property as collateral.  *Watson Ex.*

*A, Dep. of Welch* [#66-1] at 41; *Watson Ex. B, Dep. of Graff* [#66-2] at 19:19-25; *see*

*Novotny*, 90 A.F.T.R.2d at 2002-5696 through -5697.  Adverse inferences may be drawn

against a party who refuses to testify in response to probative evidence offered against

him, and Defendant Welch's silence when confronted at deposition with what appears to

be evidence of mortgages and loans is particularly suggestive to the Court. *Mitchell*, 526 U.S. at 327; *Baxter*, 425 U.S. at 319 (*quoting Hale*, 422 U.S. at 176 (1975)).

Notably, every Form 668 presented by Defendants in this case lists the Real Property as Defendant Welch's residence, and rather than contesting Plaintiff's assertions or correcting the information in these forms, Defendant Welch has pled Fifth Amendment privilege to every substantive question about the Real Property. *Response Ex. 2, 668(y) Forms* [#95-2]. Additionally, every interrogatory and document request on the docket was sent to Defendant Graff in Alaska, while Defendant Welch was still receiving mail at the Real Property. *Watson Ex. D, Jim D. Welch's Responses to United States' Interrogatories and Document Requests* [#66-4] at 20, 28; *Watson Ex. F, Amra Welch's Responses to United States' Interrogatories and Document Requests* [#66-6] at 13,19. On February 27, 2012, more than eight years after the alleged transfer, Defendant Welch filed a Freedom of Information Request which listed his return address as in care of the Real Property. *Response Ex. 6, Feb. 27, 2012 FOIA Request* [#95-6] at 3. On March 26 and April 30th, 2012, Defendant again listed his return address as in care of the Real Property, twice in each of two subpoenas to produce documents. *Response Ex. 7, Subpoena to Produce Documents for Maureen Green* [#95-7] at 1,3; *Response Ex. 8, Subpoena to Produce Documents for Sally Kilpatrick* [#95-8] at 1,4. He sent additional copies of the Forms 668 with each of these information requests, never noting the improper addresses on any of the five forms or alleging that the IRS records needed to be changed. *Id.* His only comment on these mailing addresses is to draw the Court's attention to a USPS Publication #221 for "foreign" address formatting. *Response Ex. 7, Subpoena to Produce Documents for Maureen Green* [#95-7] at 3; *Response Ex. 8, Subpoena to Produce Documents for Sally*

*Kilpatrick* [#95-8] at 4.   This reference to a non-binding advisory pamphlet seems to challenge not the mailing address, but whether or not the address places him "within the United States."   *See Response* [#95] ¶ 14.   Combined with Defendants' refusal to affirm or deny Defendant Welch's use of the Real Property, the Court finds that an adverse inference that Defendant Welch still exercises considerable control over the Real Property and benefits from its use is justified.   Similarly, Defendant Graff has refused to present evidence of any limitations she may have placed on the use of the Real Property, suggesting to the Court that if Defendant Welch does indeed continue to use the Real Property, his use is unlimited.   *Watson Ex. B, Dep. of Graff* [#66-2] at 19:19-25.

The Court also considers the possibility that this transfer was an attempt to avoid tax liability.   At the time of the purported transfer of the real property to Defendant Graff, Defendant Welch had recently been made aware that he had outstanding tax liabilities to the IRS.   Specifically, Welch was sent a notice of deficiency by the IRS on August 12, 2003.   *Routledge Decl., Ex. G. Notice of Deficiency* [#65-7].   This document notified him that it was the intent of the IRS to assess federal income tax liabilities against him for both 1998 and 1999, unless he filed a petition with the tax court within 90 days.   *Id.*   A mere four months later, Defendant Welch transferred the property to his daughter.   *Routledge Decl., Ex. O, Quitclaim Deed* [#65-15].   Under the undisputed facts of this case, Defendant Welch knew that he was indebted to Plaintiff for the federal income tax liabilities at the time of the purported transfer of the Real Property to his daughter, and after the purported transfer of the Real Property, it is undisputed that Defendant Welch no longer possessed any assets to pay these federal tax liabilities.   *Declaration of Roybal Decl.* [#64] ¶ 8.   Under these undisputed facts, and in the face of Defendants' resilient silence on the matter, the Court

is permitted to infer that this transfer was made in anticipation of litigation or other collection action concerning his federal tax debts. *Mitchell*, 526 U.S. at 327; *Baxter*, 425 U.S. at 319 (quoting *Hale*, 422 U.S. at 176 (1975)).

After weighing these factors, all of which tend to support a nominee theory, the Court finds that Plaintiff has submitted evidence to establish every element of its claim with regard to whether Defendant Graff is a nominee of Defendant Welch. The burden now shifts to Defendants to go beyond their pleadings and tender admissible, relevant evidence to show that summary judgment is not proper. *Celotex Corp.*, 477 U.S. at 324.

As previously noted, rather than advancing facts and evidence contesting the assertions of Plaintiff's motion, Defendants have pled Fifth Amendment privilege in response to every interrogatory, every document request, and almost every question at deposition. On February 13, 2012, Plaintiff served on Defendants Requests for Production of Documents and Interrogatory Requests requesting information related to this matter. *Watson Decl.* [#66] ¶¶ 4, 6. On May 12, 2012, Defendant Welch responded to the United States Discovery Requests, refusing to provide any information or documents in response to the requests and instead invoking his rights against self-incrimination under the Fifth Amendment of the United States Constitution. *Id.* ¶ 5; *Watson Ex. D, Jim D. Welch's Responses to United States' Interrogatories and Document Requests* [#66-4]. On May 14, 2012, Defendant Graff also responded to the United States Discovery Requests by invoking her rights against self-incrimination under the Fifth Amendment. *Watson Decl.* [#66] ¶ 7; *Watson Ex. F, Amra Welch's Responses to United States' Interrogatories and Document Requests* [#66-6]. On August 16, 2012, Plaintiff deposed Defendant Graff. *Watson Decl.* [#66] ¶ 2. Defendant Graff refused to answer any substantive question, invoking her rights

-33-

against self incrimination under the Fifth Amendment of the United States Constitution. *Watson Ex. B, Dep. of Graff* [#66-2]. On April 17, 2012, the United States deposed Defendant Welch. *Watson Decl.* [#66] ¶ 1. Defendant Welch also refused to answer any substantive question. *Watson Ex. A, Dep. of Welch* [#66-1].

"[T]he claim of [Fifth Amendment] privilege is not a substitute for relevant evidence." *Rylander*, 460 U.S. at 761; *accord United States v. Certain Real Prop. & Premises*, 55 F.3d 78, 83 (2d Cir. 1995) ("[T]he claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation."). In other words, "[a] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence." *$148,840.00 in U.S. Currency*, 521 F.3d at 1274 (citation omitted). Thus, despite Defendants' invocation of Fifth Amendment privilege, this Court may infer that Plaintiff's facts are uncontroverted where Defendants have offered no rebuttal evidence. *Id.*

In this case, Defendants provide no information refuting the factual allegations of Plaintiff's Motion concerning the Real Property in this case, and instead assert simply that Defendant Welch "has no interest in the property. . . [that i]t was never intended to be his, never has been his, and has never been treated as his." *Response* [#95] ¶ 62. Because neither Defendant Graff not Defendant Welch submitted competent evidence in satisfaction of their burdens, there is nothing to refute Plaintiff's evidence that these were sham transfers made for the purpose of avoiding tax liability. Therefore, the Defendants' submissions in this regard do not raise an issue of material fact requiring a trial of this issue. This Court will not allow Defendants to wield Fifth Amendment protection as a means of shirking their burden of producing evidence of a genuine issue of fact. *See*

*Rylander*, 460 U.S. at 758.  Therefore, the Court finds that Plaintiff has established that Defendant Graff is a nominee of Defendant Welch for the purpose of foreclosing a federal tax lien against the Real Property.[4]

There is no admissible evidence to refute Plaintiff's presentation of the facts establishing that (1) it had a valid tax lien and that (2) Defendant Graff held the Real Property as a nominee of Defendant Welch.  Although Defendants briefly dispute the interpretation of the facts presented by Plaintiff, they offer only frivolous arguments and conclusory claims in an attempt to satisfy their burden as the nonmoving parties and do not sufficiently satisfy their burden of going beyond the arguments in their pleadings and providing "specific facts showing there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324.  Plaintiff has met its burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law concerning the validity of the tax lien and Defendant Graff's status as nominee of Defendant Welch.  Because Plaintiff has met its burden as the party with the ultimate burden of proof at trial, summary judgment should be entered in its favor, excepting only the accuracy of the precise amount of tax liability requested.  Accordingly, the Court recommends that Plaintiff's Motion be **GRANTED IN PART** and **DENIED without prejudice IN PART**.

## IV.  Conclusion

For the reasons stated above, the Court respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [#63] be **GRANTED IN PART** and **DENIED without**

---

[4] Having found that Defendant Graff is a nominee of Defendant Welch, the Court need not consider Plaintiff's alternative argument that the transfer of title of the Real Property was a fraudulent conveyance.

**prejudice IN PART**.  The United States is entitled to judgment as a matter of law concerning both the validity of the tax lien and the authority of the United States to foreclose said lien against the Real Property.   However, the Motion is **DENIED IN PART** as to the full amount sought by the government ($6,601,594.09), without prejudice to the government's filing another dispositive motion to establish the amount to which it is entitled.

IT IS HEREBY **ORDERED** that within 21 days of the District Judge's resolution of this Recommendation, Plaintiffs shall file either: (1) a motion for summary judgment regarding the amount of Defendant Welch's liability, or (2) a motion to set Final Pretrial Conference.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).    A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

Dated:  March 13, 2013

Kristen L.  Mix
United States Magistrate Judge

-36-