IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02292-CMA-KLM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES D. WELCH, individually, and
AMRA WELCH, as nominee/alter ego of James D. Welch,

    Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff's **Renewed Motion for Summary Judgment** [Docket No. 103; Filed April 29, 2013] (the "Motion"). On June 17, 2013, Defendant Jim D. Welch ("Defendant Welch") filed a Response [#108]. On July 2, 2013, Plaintiff filed a Reply [#109]. The Motion has now been fully briefed. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.L.Civ.R. 72.1.C., the Motion has been referred to this Court for recommendation [#104]. Having considered the pleadings and the docket in this case, the Court is fully advised of the issues. For the reasons set forth below, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#103] be **GRANTED.**

### I. Statement of the Case and the Parties' Arguments

**A.    Background**

    The above-captioned lawsuit was brought by Plaintiff United States of America on August 31, 2011 [#1]. The purpose of the lawsuit was to recover unpaid taxes allegedly

owed by Defendant Welch to Plaintiff. Specifically, Plaintiff sought "[1] to reduce to judgment the outstanding federal tax liabilities assessed against James D. Welch and [2] to foreclose federal tax liens against a parcel of real property located in Colorado . . . ." *Compl.* [#1] ¶ 1. The property at issue is referred to throughout this Recommendation and the parties' pleadings as the "Real Property" and is located at "Lot 2, in Black Forest Square Filing No. 1, in El Paso County, Colorado, according to the plat thereof recorded August 28, 1998, at Reception No. 98123605." *Id.* ¶ 10; *Routledge Ex. N, Warranty Deed* [#65-14]; *Routledge Ex. O, Quitclaim Deed* [#65-15].

The Complaint alleged that Defendant Welch bought the Real Property with his own funds, transferred title to Celestial Pursuits Trust (the "CP Trust"), of which he was sole and Executive Trustee, in 1999, and then transferred title from the CP Trust to his daughter, Defendant Amra Graff, formerly Amra Welch ("Graff"). *Compl.* [#1] ¶¶ 11-13, 21; see *Decl. of Anthony Roybal ("Roybal Decl.")* [#64] ¶ 7; *Routledge Ex. O, Quitclaim Deed* [#65-15]; *Watson Ex. B, Dep. of Graff* [#66-2] at 9:15. Defendant Welch verifies in his Response that he used his personal funds to purchase the Real Property "for and on behalf of [the CP] trust and its beneficiaries." *Response* [#108] ¶ 19. He further alleges that the Real Property reverted back to him after the District Court of El Paso County ruled the CP Trust "null and void," and that he subsequently gifted the Real Property to Defendant Graff. *Id.* ¶¶ 20-21. However, Defendant Welch argues in his Response that these transactions are irrelevant to the present action, as the present action is not brought against "Jim Davis Welch," the individual engaged in these transactions, but against "JIM DAVIS WELCH" (the "JIM Trust"), "a trust which was created by the Social Security Administration." *Id.* ¶ 8.

**B.     Tax Liability**

On May 25, 2000, the Internal Revenue Service ("IRS") received a Form 1040, U.S. Individual Income Tax Return, filed by Defendant Welch for tax year 1998. *Routledge Ex. C, Form 1040 for 1998* [#65-3]. On the Form 1040, Defendant Welch claimed that he had no income for the tax year of 1998. *Id.* Plaintiff enclosed with the 1998 Form 1040 a two-page memorandum challenging the authority of the IRS to collect taxes. *Id.*; *Watson Ex. A, Dep. of Welch* [#66-1] at 30-33. According to evidence entered by Plaintiff, Defendant Welch failed to report three items of income on his 1998 tax return: $1,722,217 in gain from the sale of stock; $6,000 in nonemployee compensation; and $10,162 in taxable interest. *Watson Ex. A, Dep. of Welch* [#66-1] at 12-16; *Routledge Ex. D, Income Tax Examination Charges* [#65-4] at 2.

On May 25, 2000, the IRS also received a Form 1040, U.S. Individual Income Tax Return filed by Defendant Welch for 1999. *Routledge Ex. F, Form 1040 for 1999* [#65-6]. Defendant Welch again claimed that he had no income and enclosed a two-page memorandum challenging the authority of the IRS to collect taxes. *Id.*; *Watson Ex. A, Dep. of Welch* [#66-1] at 33-35. According to Plaintiff, Defendant Welch failed to report income on his 1999 tax return: specifically, $4,374,047 in income from stock sales, as well as $5,058 in taxable interest. *Motion for Summary Judgment ("First Motion")* [#63] at 4 (citing *Watson Ex. A, Dep. of Welch* [#66-1] at 17-21).

The Forms 1040, together with their attachments challenging the authority of the IRS to collect taxes, were referred to the IRS Penalty Screening Committee for consideration of whether Defendant Welch should be assessed a penalty for filing a fraudulent return. *1st Routledge Decl.* [#65] ¶¶ 13-18. On July 10, 2000, and August 25, 2000, the IRS sent Defendant Welch letters informing him that the Forms 1040 submitted for tax years 1998

and 1999 were frivolous and advising Defendant Welch that if he did not file corrected returns, a fraudulent return penalty would be assessed under 26 U.S.C. § 6702. *1st Routledge Decl.* [#65] ¶¶ 15-17; *Routledge Ex. J, July 10th Letter 3176* [#65-10] at 2; *Routledge Ex. K, August 25th Letter 3176 (1999 penalties)* [#65-11] at 2; *Routledge Ex. L, August 25th Letter 3176 (1998 penalties)* [#65-12] at 2. On August 30, 2001, when Defendant Welch failed to file corrected returns for either tax year, the IRS Penalty Screening Committee approved the imposition of frivolous return penalties. *1st Routledge Decl.* [#65] ¶ 18; *Routledge Ex. M, Penalty Screening Committee Case Approval Record* [#65-13]; *1st Routledge Decl.* [#65] ¶¶ 13-14; *Routledge Ex. H, Certificate of Assessments, Payments, and Other Specified Matters for 1998 Civil Penalty ("Form 4340 for 1998 Penalties")* [#65-8]; *Routledge Ex. I, Certificate of Assessments, Payments, and Other Specified Matters for 1999 Civil Penalty ("Form 4340 for 1999 Penalties")* [#65-9].

The IRS also assessed federal income tax liabilities against Welch for tax years 1998 and 1999. *1st Routledge Decl.* [#65] ¶¶ 7-18; *Routledge Ex. B, Certificate of Assessments, Payments, and Other Specified Matters for 1998 Income Tax Return ("Form 4340 for 1998 Liability")* [#65-2]; *Routledge Ex. E, Certificate of Assessments, Payments, and Other Specified Matters for 1999 Income Tax Return ("Form 4340 for 1999 Liability")* [#65-5]. On August 13, 2003, a Notice of Deficiency concerning these tax liabilities was sent to Defendant Welch by certified mail. *1st Routledge Decl.* [#65] ¶ 12; *Routledge Ex. G, Notice of Deficiency* [#65-8]. While attempting collection of these liabilities, on May 20, 2008, IRS Revenue Officer Anthony Roybal ("Roybal") interviewed Defendant Welch. *Roybal Decl.* [#64] ¶¶ 3-4. Mr. Roybal asserts that during that interview, Defendant Welch admitted to selling substantial amounts of stock in 1999 as part of the settlement of his

divorce from his ex-wife.[1]  *Id.*  Notably, Defendant Welch reported no income for 1999. *Routledge Ex. F, Form 1040 for 1999* [#65-6].

### C.    Issues Remaining for Determination

Plaintiff initially sought to foreclose its federal tax lien on the Real Property to satisfy Defendant Welch's outstanding tax liabilities for the years 1998 and 1999. *First Motion* [#63] at 8.  The Court found that, although the United States was entitled to judgment as a matter of law concerning "the validity of the tax lien and Defendant Graff's status as nominee of Defendant Welch," the exact amount of those liabilities could not be determined from the evidence submitted in support of Plaintiff's First Motion. *Recommendation* [#101] at 35.    Therefore, the Court declined to make a summary determination of the government's entitlement to interest and penalties without knowing that the amount cited in the INTSTD Calculations of Liability had been drawn "accurately and directly drawn from the presumptively valid assessment figures found in the Forms 4840." *Id.* at 27.  The Court recommended granting summary judgment, excepting only the accuracy of the precise amount of tax liability requested.  *Id.*  The District Judge adopted the Recommendation on April 8, 2013.  *Order Adopting and Affirming the Recommendation* [#102] at 2.

In its Recommendation, the Court noted that it "would be prepared to find fully in Plaintiff's favor regarding the amount of the valid tax lien" once Plaintiff demonstrated to the Court "in a transparent manner how the liability it request[ed] follow[ed] from the valid assessments presumed from the Forms 4340." *Recommendation* [#101] at 26. Plaintiff's present Motion seeks to clarify the connections between the tax assessments that the

---

[1]  Mr. Roybal does not discuss how much income Welch received from this sale.

Court found to be valid and the precise amount of tax liability requested, detailing how these valid assessments are the direct source of the information found in the INTSTD reports. *Motion* [#103] at 3-7; *Routledge Ex. A, INTSTD Calculations of Liability* [#65-1].

Defendant Welch's Response does not directly address the validity of these calculations of liability. Instead, Defendant Welch makes three arguments; he argues that (1) "neither of the alleged defendants received service with respect to the Court's Recommendations;" (2) the Court has presumed that Plaintiff is entitled to judgment "as a matter of law" without references to law supporting its holding of Defendant Welch's liability as a taxpayer; and (3) "[t]he title given to the SSA account is not a proper name, and does not reference the human Jim Davis Welch." *Response* [#15] ¶¶ 1, 2, 8, 9. Defendant Welch also argues that "a correct understanding of the nature and inter-relationship of the parties [ ] requires the Court must [sic] strike all pleadings up to this point from the Defendant Jim Davis Welch[.]" *Id.* ¶ 7.

## II. Standard of Review

### A. Summary Judgment

Summary judgment is proper when the record before the Court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if the outcome could be decided in favor of either party. *Farthing v. Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir.

2005).

Where the movant bears the ultimate burden of proof at trial, it must submit evidence to establish every element of its claims. *In re Ribozyme Pharm. Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). Once the Motion has been properly supported, the burden shifts to the non-movant to show the existence of a genuine dispute of a material issue by going beyond the allegations in its pleading and providing "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy its burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The factual record and inferences therefrom are viewed in the light most favorable to the nonmoving party. *Byers v. Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). However, the Court is not obligated to consider conclusory statements or testimony based on conjecture, subjective belief, or inadmissible evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *See Nielson v. Price*, 17

F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

The Court permitted Plaintiff to submit another dispositive motion "for determination of the total amount of liability in light of these concerns for accuracy on the face of a valid assessment." *Recommendation* [#101] at 27. Defendants were informed that they could respond in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. *Id.*

**A.   Validity of Plaintiff's Liability Calculations**

At the time of the filing of its First Motion on October 3, 2012, Plaintiff contended that Defendant Welch's outstanding tax liability was $6,601,594.09. *First Motion* [#63] at 14; *1st Routledge Decl.* [#65] ¶ 4. To support this claim, Plaintiff provided Forms 4340 for the years in question. *Routledge Ex. B, Form 4340 for 1998 Liability* [#65-2]; *Routledge Ex. E, Form 4340 for 1999 Liability* [#65-5]; *Routledge Ex. H, Form 4340 for 1998 Penalties* [#65-8]; *Routledge Ex. I, Form 4340 for 1999 Penalties* [#65-9]. Accordingly, the government's assessment was entitled to a presumption of correctness. *See United States v. McMullin*, 948 F.2d 1188, 1192 (10th Cir. 1991) (holding that a presumption of correctness attaches to the Commissioner's assessment, once some substantive evidence is introduced demonstrating that the taxpayer received unreported income); *but see Doyal v. Comm'r of Internal Revenue*, 616 F.2d 1191, 1192 (10th Cir. 1980) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935), for the holding that it was proper to remand a case in which the taxpayer had proved the amount of the Commissioner's assessment to be arbitrary and excessive). The sum of $6,601,594.09 requested in Plaintiff's first motion seemed to be taken from the First Declaration of Lee Routledge ("Routledge"), Technical

Advisor of the IRS, who determined the figure using the INTSTD computer program to compute the tax liability, penalties, and applicable interest. *1st Routledge Decl.* [#65] ¶¶ 3-4. In support of its Motion, Plaintiff has submitted the Second Declaration of Lee Routledge, which described in great detail how the documents submitted in connection with the original Motion for Summary Judgment (specifically, copies of the Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters for Jim D. Welch and reports generated by the IRS Integrated Data Retrieval System) were used to determine that Defendant Welch's federal income tax liabilities are $6,601,594.09 as of September 30, 2012, plus applicable statutory accruals from that date. *2nd Routledge Decl.* [#103-1] ¶¶ 6-16.

In this second declaration, Routledge explains that in order to compute an accurate current balance due with respect to Defendant Welch's tax assessments, "credit entries (such as payments or adjustments) must be subtracted from, and accrued interest amounts must be added to, the assessed amounts." *Id.* ¶ 6. He also explains that the "IDRS INTSTD module is used to track up-to-date interest and penalty calculations for balances owed." *Id.* Routledge explained that "the INTSTD module in IDRS was used to calculate the amount of accrued tax, interest[,] and penalties due, as of September 30, 2012, on assessments made against [Defendant] Welch for the periods and liabilities at issue in this case." *Id.* According to Routledge, "the first page of each INTSTD module printout is a summary for each period," containing the following items:

> a. total assessed amount (ASSESSED TOTAL), which is made up of assessed failure to pay penalties ("ASSESSED FTP"), assessed interest ("ASSESSED INT") and assessed tax and penalties ("TAX & PENALTY");
>
> b. total accruals that have continued to accrue pursuant to I.R.C. §§ 6601,

> 6621(a)(2), and 26 C.F.R. 301.6621-1, but have not yet been assessed ("TOTAL ACCRUALS"), which is made up of accrued but unassessed failure to pay penalties ("ACCRUED FTP") and accrued but unassessed interest ("ACCRUED INT");
>
> c. the combined amounts (both assessed and accrued) for interest ("TOTAL INT"); and for failure to pay penalties ("TOTAL FTP");
>
> d. the total "BALANCE DUE" is the sum of "ASSESSED TOTAL" and "TOTAL ACCRUALS"

*Id.* ¶ 8. Routledge also explained that the "assessed amounts [sic] reflected on each of the INSTD modules is exactly the amount listed as being assessed by the respective Forms 4340, *with one exception.*" *Id.* ¶ 10 (emphasis added). He clarifies this exception for the Court, explaining that "the INSTD module . . . includes an assessment of $54.00 for fees and collections costs, made on December 27, 2010[, and that this] amount is not reflected on the Form 4340 for that tax period and type, as that Form 4340 was prepared on March 18, 2010, prior to the assessment." *Id.* Routledge continues by explaining precisely how the INSTD module calculates variable interest rates pursuant to I.R.C. § 6621(a)(2) and penalties for failure to pay pursuant to I.R.C. § 6651. *Id.* ¶¶ 11-15.

After considering this detailed analysis of Defendant Welch's federal income tax liabilities, the Court is assured that the INSTD computations draw directly from the presumptively valid assessments, and that the outstanding balance claimed in Plaintiff's Motion follows logically from the figures represented on the Forms 4340.

**B.    Defendant Welch's Response**

Because Plaintiff has properly supported its Motion, the burden now shifts to Defendants to show the existence of a genuine dispute of a material issue by going beyond the allegations in their pleading and providing "specific facts showing there is a genuine

issue for trial." *Celotex*, 477 U.S. at 324. Defendant Welch makes three arguments in his Response to Plaintiff's Motion; he argues that (1) Defendants never received the Recommendation; (2) the Court did not cite law supporting Defendant Welch's liability as a taxpayer; and (3) the JIM Trust, and not Defendant Welch, is the proper defendant in this case. *Response* [#15] ¶¶ 1, 2, 8, 9. In connection with this last argument, Defendant Welch argues that "a correct understanding of the nature and inter-relationship of the parties [ ] requires the Court must [sic] strike all pleadings up to this point from the Defendant Jim Davis Welch[.]" *Id.* ¶ 7.

### 1. Service

Defendant Welch alleges in his Response that "neither of the alleged defendants has received service with respect to the Court's Recommendations." *Response* [#15] ¶ 1. He further alleges that had Defendants received such service, they would have been able to object in a timely manner. *Id.* Instead, Defendant Welch's filings allege that he had no opportunity to respond until he and Defendant Graff received the Renewed Motion for Summary Judgment on or about May 3, 2013. *Unopposed Motion for Extension of Time* [#105] ¶ 1.

The Court first notes that Defendants made no mention in their Motion for Extension of Time [#105] (filed May 16, 2013) that they did not receive the Recommendation. *Id.* Further, Defendants do not aver that they failed to receive the District Judge's Order Adopting and Affirming the Recommendation [#102] (issued April 8, 2013). All parties, including those proceeding *pro se*, have an obligation to keep the Court apprised of their current address. *See* D.C.COLO.LCivR 10.1.M. To any extent the Court was allegedly unable to provide Defendants with a copy of the Recommendation, the fault lies with

-11-

Defendants. The Recommendation was electronically served to Plaintiff's counsel and mailed by the Court to each Defendant at the addresses on record with the Court at that time. *See CM/ECF Notice of Electronic Filing for Docket No. 101.* Review of the docket indicates that no mail was returned to the Court as undeliverable. Further, there is no indication that Defendant Graff's mailing address has changed at any time relevant to this discussion. Defendant Welch makes no allegation in the Response that his own address has changed, although he provides the Court with a new mailing address for the JIM Trust. *Response* [#108] ¶ 27. This suggests that Defendant Welch has either received the Recommendation or has failed to inform the Court of his current mailing address; in either case, Defendant Welch bears responsibility for not receiving a copy of the Recommendation.

Accordingly, the Court finds that Defendant Welch's argument on this point has no bearing on the issues presented in the instant Motion, and is therefore rejected as without merit.

### 2. Defendant Welch's Liability as a Taxpayer "As a Matter of Law"

Defendant Welch argues that the Court has presumed "as a matter of law" that Plaintiff was entitled to summary judgment, but that this presumption was made without citation to law that would make "the regulations at Title 26 of the US Code binding upon [Defendants]." *Response* [#108] ¶ 2. Defendant Welch then challenges the applicability of the Sixteenth Amendment, arguing that it fails to impose liability for a tax. *Id.* (citing *Peck v. Lowe*, 247 U.S. 165 (1918)). Numerous courts, including the Tenth Circuit, have "both implicitly and explicitly recognized that the Sixteenth Amendment authorizes a non-apportioned direct income tax on United States citizens and that the federal tax laws

as applied are valid." *The Truth About Frivolous Tax Arguments*, Internal Revenue Service, 32 (Mar. 4, 2013), http://www.irs.gov/pub/irs-utl/friv_tax.pdf (last viewed on July 24, 2013); *see United States v. Collins*, 920 F.2d 619, 629 (10th Cir. 1990) ("For seventy-five years, the Supreme Court has recognized that the [S]ixteenth [A]mendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves; efforts to argue otherwise have been sanctioned as frivolous." (citations omitted)) (relying on *Brushaber v. Union Pac. R.R.*, 240 U.S. 1, 12-19 (1916)); *Fifteenth Str. Inv. Co. v. Nicholas*, 23 F. Supp. 863, 864 (D. Colo. 1938) ("The Congress always had power to tax income; the 16th Amendment merely removed the limitations on the power found in Art. 1, § 2, Cl. 3 and Art. 1, § 9, Cl. 4 of the Constitution . . . , requiring apportionment of taxes on income among the states.") (citations omitted). Not only is this a purely baseless and frivolous legal argument, but it has no bearing on the issue remaining in this case. The Court has already granted summary judgment as a matter of law in favor of Plaintiff concerning the validity of the tax lien and the authority of the United States to foreclose said lien against the Real Property. *Recommendation* [#101] at 37; *Order Adopting and Affirming Recommendation* [#102] at 2. The only issue remaining is the validity of the full amount sought by Plaintiff, and Defendant Welch's frivolous legal assertions fail to establish a genuine dispute of the material facts pertaining to that issue. *See Celotex*, 477 U.S. at 324.

    **3.    The JIM Trust Argument**

Defendant Welch purports to believe that the SSA created JIM DAVIS WELCH, or the "JIM Trust," when it assigned him a Social Security number ("SSN") and Social Security card ("SSC") on or about January 15, 1968. To reflect this and to verify the existence of

the JIM Trust in writing, Defendant Welch drafted a document labeled "Simple Social Security Trust" ("Trust Agreement"). *See Response* [#108] at 9. Defendant Welch sent the Trust Agreement, together with a cover letter labeled "Request for Amendment," to the Office of Central Operations of the SSA on May 21, 2013. *Id.* at 8, 9, 11. Styled as an agreement between the SSA and the Jim Trust, with Defendant Welch identified as the trustee, it provides:

> ORIGIN: In accord with the "Social Security Act of 1935" . . . , the Social Security Administration (hereinafter "SSA") created this Trust without written indenture; by delivering property, the ownership of which they reserved to the United States Government, to the Kingdom of Israel Steward, <u>Jim Davis Welch</u>, asking if that property could be held in a Trust, of the name and Social Security Number (hereinafter "SSN") printed on the so provided social security card (hereinafter "SSC") . . . . Printed upon said SSC is this Trust's name, Social Security Number and a place for the Trust's signature . . . .
>
> TRUSTEE: This Trust was created with a name that sounds nearly or exactly like the name of the child of God; who, by Covenant to obey God's Law of Consecration, only has the capacity of a Steward in the Kingdom of Israel as exemplified in a controlling Instrument of Acknowledgment. This Trust is neither said child nor that Stewardship and can in no ways act as an alter ego or nominee of either . . . .
>
> SOCIAL SECURITY NUMBER (SSN): The Creator assigned the SSN to distinguish this Trust from any other person of a same or similar name. Where the names of the Trust and said child are so similar as to sound identical and are only distinguishable by punctuation and or [sic] capitalization in spelling, the SSN so assigned, and or any other respective Taxpayer Identification Number (TIN), must be used to designate: tax payments, ownership and/or acquisition of assets, accounts and/or property held separately by the Trust.
>
> VERIFICATION: This instant instrument (hereinafter "Trust Indenture") acknowledges, verifies and secures the nature of the relationship SSA created between the parties listed herein. This Trust Indenture was generated by this Trust and presented to SSA with a Request for Amendment to SSA's records for this taxpayer (this Trust) to verify the terms of this Trust Indenture and the facts of the Trust's creation and existence as related herein.

*Id.* at 9-10 (notations in original). Although it is dated May 15, 2013, the Trust Agreement purports to reflect the creation of the JIM Trust over forty-five years prior. *Id.* at 10. Defendant Welch's signature appears at the bottom, while the SSA's agreement is stated to be evidenced by the "signature acts . . . of issuing the Trust's name and SSN[,] distributing the Social Security Card, maintaining [an] open accounting under said SSN, accepting and distributing funds in regard to the same, [and] amending the record or by [sic] tacit admission to the same." *Id.*

The SSA does not manifest the intention required to create a trust merely by assigning individuals an SSN and SSC. *See* Restatement (Second) of Trusts §§ 23, 25 (1959). Additionally, the touchstone for assigning SSNs is "true identity." *See* 42 U.S.C. § 405(c)(2)(B)(ii); 20 C.F.R. §§ 422.103(c)(1), 422.107(a), 422.110(a). However, Defendant Welch's argument that the JIM Trust is the true and accurate holder of the SSN is foreclosed by the statutory and regulatory scheme, which makes it clear that only natural persons are eligible to be assigned an SSN. *See* 42 U.S.C. § 405(c)(2); 20 C.F.R. §§ 422.103(a), (b)(1), (d), 422.104(a); 26 C.F.R. § 31.6011(b)-2(a)(ii)-(iii). Although not directly addressed by the Tenth Circuit, this same argument has been repeatedly rejected by other courts as frivolous. *See, e.g.*, *Lizalek v. Comm'r of Internal Revenue*, 97 T.C.M. (CCH) 1639, 2009 WL 1530160, at *4 (T.C. June 1, 2009); *Van De Berg v. Soc. Sec. Admin.*, 254 F.R.D. 144, 146-47 (D.D.C. 2008) (describing plaintiff's argument that the SSA created a trust that borrowed his consciousness and physical capacity when it provided him a social security card as "clearly baseless" and "frivolous"); *Bond v. Comm'r of Revenue*, 691 N.W.2d 831, 837-38 (Minn. 2005); *Smith v. United States*, No. Civ. 05-6103-AA, 2005 WL 3303939, at *1 (D. Or. Dec. 5, 2005).

In a similar and persuasive case, the Minnesota Supreme Court rejected a taxpayer's claim that the SSA has established trusts with individual taxpayers, holding that a taxpayer who earned taxable income cannot avoid tax liability by alleging a Social Security trust. *Bond,* 691 N.W.2d 831. The Court further upheld a penalty for the taxpayer's filing of a frivolous return. *Id.* at 839. Before filing his returns for tax year 2000, the taxpayer in *Bond* attempted to secure from the SSA "an actual irrevocable written 'Simple Social Security Trust' named 'FREDERICK O. BOND.'" *Id.* at 834. The taxpayer claimed that "the Trust already existed, having been established in March 1963, but he wanted the Trust's terms in writing." *Id.* The taxpayer sent to the SSA a document, referred to by the *Bond* court as the Trust Document, setting out the Trust's specific terms, naming "the SSA as the Creator of the Trust, the SSA General Trust Fund as the Beneficiary, and himself as the Trustee." *Id.* The Trust Document also "allowed income from the Trust to pay 'A Reasonable Wage' to the Trustee, including all of the Trustee's living expenses." *Id.* The taxpayer signed the Trust Document, but the Trust Document did not provide a signature line for the SSA, and no signature was obtained from the SSA. *Id.* The *Bond* court upheld the tax court's determination that the taxpayer had not shown the existence of a trust. *Id.* at 838; *see United States v. Meek*, 998 F.2d 776, 778 (10th Cir. 1993) (upholding taxpayer's conviction of willfully failing to file an income tax return and willfully attempting to evade taxes because his "trust" had been formed through his membership in an organization that provided its members the opportunity to warehouse their funds until directed to disburse them); *see also The Truth About Frivolous Tax Arguments*, Internal Revenue Service, 37 (Mar. 4, 2013), http://www.irs.gov/pub/irs-utl/friv_tax.pdf (last viewed on July 24, 2013) ("[T]he IRS warned

that taxpayers may not eliminate their federal income tax liability by attributing income to a trust and claiming expense deductions related to that trust.") (citing Rev. Rul. 2006-19, 2006-1 C.B. 749).

The purpose of Social Security is not to create trusts with individual taxpayers, but is to provide social insurance for the "security of the men, women, and children of the Nation against certain hazards and vicissitudes of life." *Economic Security Act Hearings Before the Committee on Ways and Means House of Representatives*, 74th Cong. 13 (1935) (Message from the President of the United States Transmitting A Recommendation for Legislation on the Subject of Economic Security).  Defendant Welch claims that the following "signature acts" provide evidence of the SSA's intent to establish the JIM DAVIS WELCH Trust: (1) the issuance of a SSN to the JIM Trust; (2) the distribution of a SSC to the JIM Trust; (3) the holding open of an account under the JIM Trust's issued SSN; (4) the accepting and distributing of funds in said account; and (5) the tacit admission of Defendant Welch's request to amend the JIM Trust's account.  *Response* [#108] at 10.  For the reasons stated above, the Court concludes that these acts do not create a genuine issue of material fact as to whether the SSA intended to create a trust.

Even assuming there were any grounds for finding the existence of an SSA-created trust named JIM DAVIS WELCH, the simple fact that Defendant Welch's name has appeared on tax assessments or Court documents with all capital letters does not suggest that the Plaintiff's Complaint, the Forms 4340, or the alleged tax liability apply to any other than Jim Davis Welch, the individual.  *See Ford v. Pryor*, 552 F.3d 1174, 1179 (10th Cir. 2008) (holding that the argument that a summons did not identify taxpayer because his name was typed in all capital letters was "wholly frivolous"); *United States v. Luginbyhl*, No.

06-cr-0206-CVE, 2007 WL 2344911, at *1 (N.D. Okla. Aug.16, 2007) (same, citing multiple cases); *see also Johnson v. Comm'r*, T.C. Memo.1999-312, *aff'd* 242 F.3d 382 (9th Cir. 2000) (holding that petitioner's contention that "he was not the taxpayer named in the notice of deficiency because the name on the deficiency notice was spelled in capital letters, and that corporations, not individuals, spell their names with capital letters" was frivolous); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir.1992) (holding, in response to a similar argument, that "[t]hese issues are completely without merit, patently frivolous, and will be rejected without expending any more of this Court's resources on their discussion"). The Court finds that Defendant Welch's argument is "wholly frivolous," and these frivolous legal assertions fail to establish either a genuine dispute of the material facts pertaining to that issue or grounds for striking Defendant Welch's previous filings. *See Celotex*, 477 U.S. at 324.

Defendant Welch has failed to provide any information to refute or rebut the information submitted in connection with Plaintiff's Renewed Motion for Summary Judgment [#103]. Instead, Defendant Welch's Response offers only frivolous arguments and conclusory claims in an attempt to satisfy his burden as the nonmoving party and does not sufficiently satisfy Defendant Welch's burden of providing "specific facts showing there is a genuine issue for trial." *Id*. Plaintiff has met its burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law concerning the validity of the tax lien and the accuracy of the precise amount of tax liability requested. Accordingly, the Court **recommends** that Plaintiff's Motion be **granted** and that the Court enter judgment against Defendant Welch in the amount of $6,601,594.09 as of September 30, 2012, plus applicable statutory accruals (specifically, interest and statutory additions

Case 1:11-cv-02292-CMA-KLM Document 110 Filed 07/25/13 USDC Colorado Page 19 of 19

accrued but unassessed, as provided by 28 U.S.C. § 1961(c)(1) and 26 U.S.C. §§ 6601, 6621, 6651, 6654; 26 C.F.R. § 301.6621-1), from that date.

## IV. Conclusion

For the reasons stated above, the Court respectfully **RECOMMENDS** that Plaintiff's Renewed Motion for Summary Judgment [#103] be **GRANTED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 25, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge